NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LUCY ELLEN CANDY DIVISION OF
F & F LABORATORIES, INC.,
Respondent.

No. 73–2029.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 1974.

Decided June 10, 1975.

Elliott Moore, Deputy Associate Gen. Counsel, David A. Fleischer and John S. Irving, N. L. R. B., Washington, D. C., for petitioner.

William L. Sharp, Chicago, Ill., for respondent.

Harold A. Katz, Chicago, Ill., for intervenor.

Before PELL, SPRECHER and LAY,[*] *Circuit Judges.*

PELL, *Circuit Judge.*

The National Labor Relations Board (Board) seeks enforcement, pursuant to § 10(e)[1] of the National Labor Relations Act, of its order issued against Lucy Ellen Candy Division of F & F Laboratories, Inc. (Company). The Board, in agreement with the administrative law judge, found that the Company violated § 8(a)(1)[2] of the Act by interrogation of an employee and prospective employees; by threats, if employees organized, of plant closure or more onerous working conditions; and by conditioning a particular pay raise on the outcome of the election. The Board's order requires the Company to cease and desist from the unfair labor practices found and from interfering with, restraining, or coercing its employees, in any like or related manner, in the exercise of their Section 7 rights and to post appropriate notices.[3]

The principal issues before this court are: (1) whether there is substantial evidence to support the Board's finding; and (2) if so, whether a penalty should be assessed against the Company for instituting an allegedly frivolous challenge to the Board's order.

## I

In May 1972, organizational activity on behalf of International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (Union) began at the Company plant in Sullivan, Illinois. A petition for an election was filed on July 21, and an election was scheduled for August 23. All of the violations found by the Board occurred shortly before or immediately after the representation election. Every violation of the Act involved the Company's personnel manager, Jean Colclasure.

### Interrogation

██ Colclasure's questioning of the applicants clearly constituted coercive interrogation in violation of § 8(a)(1). See *United Gas Pipe Line Co. v. NLRB*, 471 F.2d 395 (5th Cir. 1973); *NLRB v. Tesoro Petroleum Corp.*, 431 F.2d 95, 96 (9th Cir. 1970). Colclasure, who was in charge of hiring, specifically warned two applicants that they could not be hired if they favored the Union. See *Time-O-Matic, Inc. v. NLRB*, 264 F.2d 96, 99 (7th Cir. 1959); *NLRB v. Waukesha Lime & Stone Co., Inc.*, 343 F.2d 504, 508–09 (7th Cir. 1965). As the administrative law judge noted, "Colclasure's interrogation of these individuals, including her interrogation of [the employee], was an integral part of the hiring process. In that context the interrogation promised the employees questioned, as well as others who might hear it, that those opposing the Union had a better chance of being rewarded with jobs, and threatened that those favoring the Union would not be

---

[*] Circuit Judge Donald P. Lay of the Eighth Circuit is sitting by designation.

1. 29 U.S.C. § 160(e).

2. 29 U.S.C. § 158(a)(1).

3. The Board's order is reported at 204 NLRB No. 8.

hired or, if already working, would be in danger of losing their jobs." It is immaterial, moreover, that some of the applicants questioned were not, and never became, employees of the Company. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 182, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Time-O-Matic, supra* at 99.

The Company contends that the three applicants were not credible witnesses and that Colclasure's testimony should be credited rather than that of the applicants.[4] The administrative law judge, however, specifically stated: "I do not credit Colclasure and I find that the reason she interrogated the applicants and [the employee] was that she wanted to avoid hiring applicants favorable to the Union." With regard to this credibility resolution, the record as a whole does not present such exceptional circumstances as to "make inapplicable the rule that the Board's action in crediting and discrediting witnesses will not ordinarily be disturbed on review." *Sarkes Tarzian, Inc. v. NLRB*, 374 F.2d 734, 736 (7th Cir. 1967), *cert. denied,* 389 U.S. 839, 88 S.Ct. 64, 19 L.Ed.2d 102.

### Threats

■ The evidence indicated that in late June or early July, in the presence of other employees, Colclasure told her son-in-law, also an employee, that he would have to look for another job. When he asked why, she said that if the Union came in, the plant would be closed down and he would be out of a job.

An employee further testified that about a week after the election, Colclasure stated, in the presence of several employees, that Steve Land, an employee and Union proponent, would "get his." When someone asked what this meant, Colclasure purportedly replied that the Company had a few "choice jobs" for Land if he did not stop "causing trouble about the Union." Although Land was not present when this threat was made, he was later informed of it.

■ We conclude that the evidence is more than sufficient to justify the Board's finding that these statements constituted § 8(a)(1) violations. The Board has the primary responsibility for determining whether statements are to be construed as threats or mere expressions of opinion and the Board's decision will not be disturbed on appeal unless the record as a whole does not reveal substantial evidence in support of the finding. *NLRB v. Acker Industries, Inc.,* 460 F.2d 649, 653 (10th Cir. 1972). Here, the Board could reasonably conclude that Colclasure's statements to her son-in-law were intended and understood not as merely a permissible prediction of action which would be necessitated by economic considerations resulting from unionization but, rather, as a threat that if the employees chose to organize, the company would close the plant and discharge them. *NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 619, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *Wausau Steel Corp. v. NLRB*, 377 F.2d 369, 372 (7th Cir. 1967). Similarly, Colclasure's statement that, if Land persisted in his union activity, the Company had some "choice jobs" for him implied to the employees who heard it, as well as to Land, that employees would receive less desirable or more onerous work if they engaged in union activity thereafter. Such a threat clearly violates § 8(a)(1). See *NLRB v. Brown Specialty Co.,* 436 F.2d 372 (7th Cir. 1971).

The Company contends, however, that Colclasure was a "low-level" supervisor who did not have the power either to close the plant or to discharge employees. The record does not support this contention. Colclasure was the personnel manager and in charge of hiring. At the hearing, Colclasure admitted that although she did not actually discharge

---

4. At the hearing before the administrative law judge, Colclasure admitted questioning one of the applicants about his feelings toward the Union but stated that this was only because, due to "problems" at the plant, she did not want to hire anyone who had strong feelings one way or the other about the Union.

employees, her opinion was taken into account in these matters. We note, moreover, that at the hearing the attorney for the Company argued strenuously, in relation to another issue, that Colclasure was a "supervisory" employee and a "managing agent" of the plant. In its brief filed in this court, the Company refers to her as one of five "managerial supervisors in the plant."

The Company also argues, here again, that Colclasure's testimony should be credited rather than that of the employees. In each instance, however, the administrative law judge obviously discredited Colclasure's testimony and credited that of the employees.[5] We decline to disturb these credibility determinations.

### Wage Increase

■ It is well established that the withholding of a wage increase, which the employee would otherwise have received, because of the pendency of the election, is unlawful. "The cases make it crystal clear that the vice involved in both the unlawful increase situation and the unlawful refusal to increase situation is that the employer has *changed* the existing conditions of employment. It is this *change* which is prohibited and which forms the basis of the unfair labor practice charge." *NLRB v. Dothan Eagle, Inc.,* 434 F.2d 93, 98 (5th Cir. 1970). See *Great Atlantic & Pacific Tea Co.,* 166 NLRB 27, 29 n.1 (1967).

■ In the present case, when an employee asked about a raise which the Company ordinarily automatically granted after three months employment, Colclasure informed the employee that the Company could not tell her anything definite until the election was over, but that if it "went the way they figured it would," she would get the increase and it would be made retroactive to the day she completed three months' service. As the administrative law judge noted, "in view of [the Company's] known opposition to the Union . . . the natural meaning of Colclasure's statement was that [the employee] would get the increase if the Union lost the election." Since the wage increase in question, which had been promised to the employee before the organizational campaign began, was an automatic increase and would have been granted if the Union had not been attempting to organize, the Company's reliance on *J.J. Newberry Co. v. NLRB,* 442 F.2d 897 (2d Cir. 1971), is inapposite.

Moreover, once again we reject the Company's suggestion that we should disturb the administrative law judge's finding with regard to the credibility of the witnesses.[6]

## II

■ The Union, intervening in the action before this court, argues that a penalty should be assessed against the Company on the grounds that its failure to comply with the enforcement order was frivolous, causing a needless waste of this court's time. The Union points out that the Company has repeatedly challenged in this court the administrative law judge's credibility determinations, findings which are generally not disturbed on review. We also note that the only relief ordered by the Board was a cease and desist order and an order requiring the posting of notices.[7]

---

5. With regard to the statement to the son-in-law, the administrative law judge stated:

"Colclasure impressed me unfavorably with respect to credibility and I have credited Land's [an employee who overheard the remarks] testimony over hers. Further, I do not credit her testimony that her threat was intended as a joke."

6. The Company also argues, with respect to all the violations, that the Board's complaint was ambiguous and that the Company was denied due process at the hearing before the administrative law judge. We do not find these contentions persuasive.

7. The Company's contention that the Board's relief here is arbitrarily excessive is without merit.

Rule 38, Fed.R.App.P., permits the award of damages or double costs upon a determination that an appeal is frivolous.[8] See *Renken v. Harvey Aluminum,* 475 F.2d 766 (9th Cir. 1973), and *Furbee v. Vantage Press, Inc.,* 150 U.S.App.D.C. 326, 464 F.2d 835, 837 (1972), collecting cases. In particular, the First Circuit has taxed additional costs as a penalty where a company has frivolously challenged a Board order. *NLRB v. Hijos De Ricardo Vela, Inc.,* 475 F.2d 58, 61 (1st Cir. 1973); *NLRB v. Smith & Wesson,* 424 F.2d 1072, 1073 (1st Cir. 1970). See also *NLRB v. Sauk Valley Mfg. Co.,* 486 F.2d 1127, 1133–34 (9th Cir. 1973).

In this proceedings, the Company has argued vigorously and lengthily that the Board's order should not be enforced, urging various points in support of its position. While we have not been persuaded that the Board's order should not be enforced, if we were to accede to the request that a Rule 38 penalty be assessed, we would be, in our opinion, determining in effect that the Company had undertaken the present litigation in bad faith measured on a reasonable and objective basis. A frivolous appeal means something more to us than an unsuccessful appeal. We will grant that law may become so clear and well established that persistence in a course could be determinative of bad faith. We simply are saying that we are not so persuaded in the present case. We also bear in mind that notwithstanding the overburdened condition in which the courts now find themselves we would not desire to take action which could become the basis of chilling the assertion of rights reasonably held in good faith by virtue of imposing a penalty because of a failure to prevail in the litigation. Further, while the courts generally do uphold the credibility determinations of administrative boards, as well as of other triers of fact, such a result is not mandatory and litigants should not be deterred from good faith and reasonable efforts to show the lack of any proper support for a credibility determination.

Accordingly, we follow the guideline of *Sauk Valley, supra,* and "decline to institute this procedure in the instant case [while reserving] the right to assess such penalties in appropriate future circumstances." 486 F.2d at 1134.

Application for Enforcement granted; Rule 38 Penalty denied.

---

8. Rule 38 provides:

"If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."