In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1204

CRAIG A. CHILDRESS,

*Plaintiff-Appellant*,

*v.*

ROGER E. WALKER, JR., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-01230-JPG — **J. Phil Gilbert**, *Judge*.

ARGUED FEBRUARY 20, 2015 — DECIDED MAY 21, 2015

Before RIPPLE, KANNE, and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Craig Childress brought this action under 42 U.S.C. § 1983 against numerous administrators and individuals affiliated with the Big Muddy River Correctional Center ("BMRCC") in Ina, Illinois. He alleged that those individuals had violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Specifically, he claimed that, upon completion of a prison-sponsored reentry program, the program instruc-

tor delivered a computer disk containing Mr. Childress's resume to the property officer, who in turn placed it in Mr. Childress's property box.

Mr. Childress later was discharged on mandatory supervised release ("MSR"); one of the terms of his release was that he could not possess any computer-related material. Following his release, a routine inspection of his living quarters revealed the envelope containing the computer disk, and his release was revoked.

After serving his extended sentence, Mr. Childress, acting pro se, filed this action. The district court, on initial review under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, dismissed the suit. On reconsideration, the court determined that Mr. Childress was not a prisoner within the meaning of the PLRA but that his action nevertheless should be dismissed on in forma pauperis review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The district court's dismissal of Mr. Childress's complaint was premature. His complaint set forth sufficient facts to proceed against at least one of the defendants. Moreover, he should have been granted the opportunity to amend his complaint to cure any deficiencies in the remainder of his claims. Finally, the district court failed to consider adequately Mr. Childress's request to recruit counsel. For these reasons, we reverse the court's judgment and remand the case for further proceedings.

# I

## BACKGROUND[1]

### A.

While Mr. Childress was serving a sentence at BMRCC for attempted aggravated sexual assault, he participated in a Lifestyle Redirection Program. The three-week program is intended to assist inmates with reentry into the community and with finding employment. Defendant Danalyn Wilson is the program instructor. It is the "policy, practice, and procedure" of the program to provide each participant with a hardcopy of the participant's resume and cover letter and to forward a computer disk with those materials to the BMRCC property room.[2] This practice is known to BMRCC administrative staff. Consistent with this practice, when Mr. Childress completed the program on August 10, 2010, a computer disk containing his cover letter and resume was sent to the property room to be placed with his other belongings.

Mr. Childress was released from custody on August 19, 2010. One of the conditions of his release was that he not "possess[] … computer related items."[3] Upon his release,

---

[1] Because Mr. Childress's complaint was dismissed for failure to state a claim, we accept as true all facts alleged in his complaint and all reasonable inferences therefrom. *See, e.g.*, *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Moreover, because his complaint was pro se, we construe it liberally and hold it to less stringent standards than pleadings drafted with the assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] R.1 at 9.

[3] *Id*. at 20.

Mr. Childress was provided with his personal property, including an envelope that contained the computer disk from the Lifestyle Redirection Program. The sealed envelope did not bear any markings that indicated or suggested that it contained a computer disk.

Fifteen days later, on September 3, 2010, agents of the Illinois Department of Corrections ("IDOC") conducted an inspection of Mr. Childress's immediate living area. During that inspection, they discovered the still unopened envelope containing the computer disk from the Lifestyle Redirection Program. Mr. Childress was taken into custody for violating the conditions of his release. He initially was housed at the Statesville Correctional Center but, on November 16, 2010, was transferred back to BMRCC. When Mr. Childress arrived at BMRCC, he was greeted by the Assistant Warden of Programs, Ty Bates, who told Mr. Childress that there had been two other incidents in which inmates had been taken back into custody after follow-up inspections uncovered computer disks associated with prison programs. The following month, Mr. Childress's MSR was revoked following a hearing.

## B.

After Mr. Childress served his criminal sentence, he was detained at the Treatment and Detention Facility in Rushville, Illinois, an institution administered by the Illinois Department of Human Services to house individuals held pursuant to Illinois's Sexually Violent Persons Commitment Act, 725 ILCS 207/1-99. On December 3, 2012, while at Rushville, Mr. Childress filed the present action, alleging that the pris-

on administration's practice of placing computer disks in inmates' property subjected him to an unnecessary risk of re-incarceration in violation of the Eighth Amendment and of the Due Process Clause of the Fourteenth Amendment. He named as defendants several IDOC directors, wardens of BMRCC, and other individuals affiliated with the Lifestyle Redirection Program.[4] Mr. Childress also filed a motion for leave to proceed in forma pauperis and a motion to appoint counsel. One week later, Mr. Childress filed a second motion for appointment of counsel.

On February 20, 2013, the district court dismissed Mr. Childress's complaint for failure to state a claim and de-nied all pending motions (including the motions to appoint counsel) as moot. The district court explained that it was re-quired under the PLRA "to conduct a prompt threshold re-view" of the merits of Mr. Childress's claim.[5] In undertaking this analysis, it was unable to conclude that any defendant knew that the placement of the computer disk in Mr. Childress's property would violate the conditions of his release. "At most," the court continued, "Plaintiff's allega-tions indicate that the placement of the computer disk in his property could have been a negligent act. A defendant can never be held liable under § 1983 for negligence."[6] Addition-

---

[4] The IDOC directors named as defendants are S.A. Godinez, Gladyse Taylor, Michael Randle, and Roger Walker; the wardens named are John Evans, Robert Hilliard, William Peyton, and Ty Bates; other prison personnel named are Angela Winsor and R. G. Eubanks. Ms. Wil-son, the Lifestyle Redirection Program instructor, also is named as a de-fendant, but is employed by Rend Lake College, not the BMRCC.

[5] R.7 at 2.

[6] *Id*. at 3.

ally, Mr. Childress "had exclusive control over his property items and could have easily found the computer disk. Indeed, it appears from the complaint that he knew he would be given the disk upon completion of the Life Style program, since he states that this was the regular practice."[7] Furthermore, even if Ms. Wilson had violated Mr. Childress's rights by giving him the computer disk, the court explained that

> this would not translate into liability on the part of the wardens, IDOC Directors, or other Defendants in supervisory positions. The doctrine of *respondeat superior* is not applicable to § 1983 actions; to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right."[8]

The district court therefore dismissed Mr. Childress's complaint with prejudice, indicated that the dismissal would count as a "strike[]" under the provisions of 28 U.S.C. § 1915(g), and ordered the clerk to close the case and enter judgment in favor of the defendants.[9] It denied the remaining motions as moot.

Mr. Childress then filed a motion seeking to alter, set aside, and vacate the judgment under Federal Rule of Civil Procedure 59(e). He argued that he was not a prisoner for purposes of the PLRA, and that, therefore, the district court should not have subjected his complaint to PLRA pre-

---

[7] *Id.*

[8] *Id.* at 4 (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)).

[9] *Id.* at 5.

screening. Mr. Childress also maintained that there were errors in the district court's substantive analysis and requested that he be permitted to amend his complaint.

The district court granted in part and denied in part Mr. Childress's motion. The court agreed that Mr. Childress was not a prisoner for purposes of the PLRA. Nevertheless, because Mr. Childress had sought leave to proceed in forma pauperis, his complaint was subject to review under 28 U.S.C. § 1915(e)(2), which requires the court to dismiss any in forma pauperis action that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The court therefore reexamined the pleadings and found "no error in its conclusion that the factual allegations did not indicate that any Defendant's conduct rose to the level of unconstitutional deliberate indifference."[10]

Mr. Childress filed a timely notice of appeal.

## II

### DISCUSSION

On appeal, with the assistance of counsel, Mr. Childress submits that the district court committed several errors. He first maintains that his complaint did state a claim, and, therefore, it should not have been dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii). Even if his complaint were deficient in some manner, Mr. Childress contends that the district court should have granted him leave to amend. Finally,

---

[10] R.16 at 6.

Mr. Childress argues that the district court committed legal error in failing to consider his motion to appoint counsel.

**A.**

We turn first to the allegations of his complaint. Mr. Childress submits that he stated a claim for violations of his substantive and procedural due process rights under the Fourteenth Amendment as well as for violations of the Eighth Amendment.

Mr. Childress's primary argument on appeal is that the defendants' actions violated his substantive due process rights. The Supreme Court has stated, however, that plaintiffs should resort to the substantive guarantees of the Due Process Clause for relief only when there is not "a particular Amendment [that] provides an explicit textual source of constitutional protection against a particular sort of government behavior." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation marks omitted); *accord Armstrong v. Squadrito*, 152 F.3d 564, 569 (7th Cir. 1998) (quoting *Cnty. of Sacramento*, 523 U.S. at 842). The Eighth Amendment is the primary source of constitutional protection for incarcerated individuals. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 664–68 (1977) (describing the history of the Eighth Amendment and noting that "[t]he primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes" (second alteration in original) (internal quotation marks omitted)). Consequently, we evaluate Mr. Childress's complaint under the standards of the Eighth Amendment.

A plaintiff states a claim for an Eighth Amendment viola-
tion if he is detained in jail for longer than he should have
been due to the deliberate indifference of corrections offi-
cials. *See Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006)
(observing that the plaintiff's allegations that "he was de-
tained in jail longer than he should have been due to the 'de-
liberate indifference and delay' of DOC officials," "if proved,
would establish a violation of Burke's Eighth Amendment
right to be free from cruel and unusual punishment"); *Camp-
bell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (holding that
the plaintiff's allegations that he had been imprisoned too
long due to the deliberate indifference of prison officials
stated a claim for a violation of the Eighth Amendment).
Here, Mr. Childress maintains that the defendants' deliber-
ate indifference resulted in the deprivation of his liberty in-
terests because the defendants "knew that the conditions of
his release prohibited him from possessing computer-related
materials, but that they nevertheless placed, or condoned a
policy which caused to be placed, a computer disk in his exit
property in a sealed envelope."[11]

The State, on behalf of the defendants,[12] perceives no er-
ror in the district court's approach. It contends that the
touchstone of deliberate indifference is subjective awareness:
it is not sufficient to allege that the correctional officers
should have recognized a risk; rather, they personally must
have perceived and ignored the risk. In the State's view,

[11] Appellant's Br. 28 (citations omitted).

[12] Because the district court dismissed the action without any responsive
pleadings by the defendants, we invited the Attorney General of Illinois
to participate in the briefing. We thank the Attorney General for her
submission on their behalf.

there is no evidence, however, that the BMRCC administrative staff knew of this practice or knew the potential consequences that it had for Mr. Childress. Moreover, the State continues, there are only two people who personally participated in the placement of the computer disk in Mr. Childress's possessions: (1) Ms. Wilson, the instructor of the Lifestyle Redirection Program, and (2) the BMRCC property-room officer—a nondefendant—who placed the disk with Mr. Childress's property. Mr. Childress did not allege that Ms. Wilson was aware of the conditions of his parole; therefore, the State concludes, Ms. Wilson could not have known that placing the disk in his possessions put his MSR in jeopardy. Accordingly, the State maintains that the district court did not err in dismissing Mr. Childress's complaint.

The State—like the district court—misapprehends both the bases for § 1983 liability and the substance of Mr. Childress's allegations. Although the State and the district court are correct that an individual must be personally responsible for a constitutional deprivation in order to be liable, personal responsibility is not limited to those who participate in the offending act, here placing the disk with Mr. Childress's property. Liability extends to those who, having a duty under the Constitution to the plaintiff, "'act[] or fail[] to act with a deliberate or reckless disregard of plaintiff's constitutional rights.'" *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). Liability can also attach "'if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'" *Id.* (quoting *Smith*, 761 F.2d at 369); *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (quoting same); *see also Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (noting, in the context of an excessive force claim, that

an officer is personally responsible, and thus liable under § 1983, if he knows about another's constitutional violation, has a realistic opportunity to prevent it, but deliberately or recklessly fails to do so); *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (reiterating that "a prison official may be liable 'only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). In the case of those responsible for setting policy, liability will result from the institution of a "policy that, when enforced, causes a constitutional deprivation." *Brokaw*, 235 F.3d at 1013; *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). Thus, allegations that a prison administrator knew that the conditions of a prisoner's mandatory release included a ban on computer-related material, but nevertheless instituted, condoned, or willfully turned a blind eye to a practice that placed computer-related material among prisoners' possessions, state a claim for relief under the Eighth Amendment.

These are the precise allegations that Mr. Childress sets forth in his complaint. He alleges that there is a regular practice of placing computer disks with inmates' property.[13] Moreover, he alleges that prison administrators knew of this practice and knew that this practice put at least some recently released prisoners in jeopardy of losing their freedom, but nevertheless did not alter, change, or otherwise intervene to prevent the harm. Specifically, on his return to BMRCC in November 2010, Assistant Warden Bates admitted to

---

[13] *See* R.1 at 9 ("The policy, practice, and procedure of said program[']s curriculum was to provide … a floppy computer disk which was forwarded to the property room … .").

Mr. Childress that two other inmates had been re-incarcerated on the basis of "the same policies, practice, and procedures regarding floppy disk[s] associated with institutional programs being placed in the outgoing property of inmates by IDOC Employees."[14]

While acknowledging that these statements have to be accepted as true, the State argues that they "fall far short of establishing that Bates or any other defendant disregarded a substantial risk of harm to Childress."[15] Specifically, the State maintains that they do not establish that Assistant Warden Bates knew about the practice of the Lifestyle Redirection Program or that he knew about the conditions of Mr. Childress's release.

We cannot accept this argument. To survive dismissal, a plaintiff's complaint "need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Specific facts are not necessary … ." *Id.* Here, Mr. Childress alerts Assistant Warden Bates to his claim and to the basis of that claim: Assistant Warden Bates, as "Assistant Warden of Programs,"[16] was familiar with the practices of the Lifestyle Redirection Program; he knew that the practices of the Lifestyle Redirection Program, or of similar programs, were causing recently released inmates to lose their freedom, but did nothing to prevent this harm; indeed he "continued to adhere to[]

---

[14] *Id.* at 10.

[15] Att'y Gen.'s Br. 16.

[16] R.1 at 10.

and follow these same policies, practices, and procedures all to the detriment and deprivation of the plaintiff[']s Constitutional Rights."[17] These allegations satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8(a)(2).

**B.**

Whether these allegations are sufficient to state a claim against other members of the BMRCC administrative staff is a question that we need not reach at this juncture because we conclude that the district court abused its discretion in denying Mr. Childress leave to amend his complaint. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) ("We review the district court's denial of a request to vacate the judgment and for leave to file an amended complaint under an abuse of discretion standard.").

In *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013), we held that, when a court dismisses a complaint sua sponte on in forma pauperis review, the court must allow that plaintiff the same opportunity to amend his complaint as a fee-paying plaintiff would have received. *See id*. at 1022–23. We outlined the contours of a plaintiff's right to amend in *Bausch*. We explained that,

> [a]s a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading. A plaintiff is entitled to amend the complaint once as a matter of right, Fed. R. Civ. P. 15(a),

---

[17] *Id*. at 11.

and a court should "freely give leave [for a par-
ty to file an amended complaint] when justice
so requires." Fed. R. Civ. P. 15(a)(2). A district
court may deny leave to file an amended com-
plaint in the case of "undue delay, bad faith or
dilatory motive on the part of the movant, re-
peated failure to cure deficiencies by amend-
ments previously allowed, undue prejudice to
the opposing party by virtue of allowance of
the amendment, [and] futility of amendment."
However, while a court may deny a motion for
leave to file an amended complaint, such deni-
als are disfavored. As we said in *Foster* [*v.
DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)],
"[d]istrict courts routinely do not terminate a
case at the same time that they grant a defend-
ant's motion to dismiss; rather, they generally
dismiss the plaintiff's complaint without prej-
udice and give the plaintiff at least one oppor-
tunity to amend her complaint."

*Bausch*, 630 F.3d at 562 (second, third, and fifth alterations in
original) (citation omitted); *see also Alioto v. Town of Lisbon*,
651 F.3d 715, 721 (7th Cir. 2011) ("[A] motion to dismiss un-
der Rule 12(b)(6) is not a responsive pleading and so, if an
answer has not been filed, a plaintiff ordinarily retains the
ability to amend his complaint once as a matter of right,
even after a court grants a motion to dismiss."). Had the
court followed the appropriate course, therefore, Mr. Chil-
dress should have been allowed to amend his complaint
against the remaining defendants to aver more specifically
their knowledge of the practices of the Lifestyle Redirection

Program as well as their knowledge of the conditions of Mr. Childress's release.

Here, following the district court's initial review under the PLRA, it not only dismissed the complaint, but also entered judgment against Mr. Childress. "Once final judgment has been entered in a case, 'the district court lacks jurisdiction to entertain a motion for leave to amend the complaint unless the plaintiff also moves for relief from the judgment.'" *Foster*, 545 F.3d at 584 (quoting *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995)).

We confronted a similar situation in *Foster*. There, as here, the district court dismissed the complaint and entered judgment in favor of the defendants without affording the plaintiff the opportunity to amend the complaint. The plaintiff, like Mr. Childress, filed an unsuccessful motion to alter the district court's judgment under Federal Rules of Civil Procedure 59(e) and 60(b), coupled with a motion for leave to file an amended complaint. *See id.* at 583.[18] In evaluating the district court's actions in *Foster*, we noted that

> [r]elief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case, and "the mere desire to expand allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment." Yet the district court left the plaintiff with little recourse … because it simultaneously granted the defendants' motion to dismiss and terminated the case.

---

[18] Mr. Childress's motion invoked only Rule 59(e), and his request to file an amended complaint appeared in his Rule 59(e) motion.

*Id*. at 584 (citation omitted) (quoting *Camp*, 67 F.3d at 1290). In *Foster*, we determined that the district court's premature dismissal, coupled with its failure to "provide any explanation for why it denied the motion to amend" constituted an abuse of discretion. *See id.* at 584–85.

In the present case, the district court's denial of Mr. Childress's Rule 59(e) motion was not completely bereft of explanation. The court acknowledged that it had proceeded under the incorrect statute, but nevertheless determined that, applying the standards of 28 U.S.C. § 1915, the same result obtained: "Having re-examined the pleadings, the Court finds no error in its conclusion that the factual allegations did not indicate that any Defendant's conduct rose to the level of unconstitutional deliberate indifference."[19] As we have demonstrated, however, in its initial assessment of Mr. Childress's complaint, the district court read his allegations too narrowly and also employed a cramped understanding of the scope of § 1983 liability. The "district court's application of an erroneous view of the law is by definition an abuse of discretion." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (internal quotations marks omitted). The district court, therefore, abused its discretion in denying Mr. Childress's Rule 59 motion, which included his request to file an amended complaint.

## C.

Lastly, we turn to Mr. Childress's claim that the district court should have recruited counsel to act on his behalf. On

---

[19] R.16 at 6.

two occasions prior to the district court's dismissal of his complaint, Mr. Childress asked the court to appoint counsel. The district court did not act on those requests, but, instead, denied all of Mr. Childress's remaining motions as moot following its dismissal of the complaint.

Section 1915(e)(1) of Title 28 provides that "[t]he court may request an attorney to represent any person unable to afford counsel." We recently reiterated the standards to be applied by the district court in determining whether it should act under § 1915(e)(1):

> In *Pruitt* [*v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc),] we refined the standards for evaluating whether to recruit counsel. If a plaintiff makes a reasonable attempt to secure counsel, the court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Pruitt*, 503 F.3d at 655. This inquiry does not focus solely on the plaintiff's ability to *try* his case—it also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.* When ruling on a motion to recruit counsel, the court should take account of all evidence in the record relevant to the plaintiff's capacity to litigate.

*Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (per curiam). There is no question that the court abused its discretion in failing to address Mr. Childress's motion for appointment of counsel. We previously have recognized that "[t]he failure of the trial court to exercise its discretion at all—in this case,

in failing to rule on appellant's request for appointment of counsel—constitutes an abuse of discretion." *Brown-Bey v. United States*, 720 F.2d 467, 471 (7th Cir. 1983). Moreover, we believe that Mr. Childress was prejudiced by the district court's failure to recruit counsel.

"The ordinary remedy in this situation is [to] remand" and allow the plaintiff to proceed "with the assistance of re-cruited pro bono counsel." *Pruitt*, 503 F.3d at 650. Here, however, the district court never acted on Mr. Childress's motion for the appointment of counsel. Given that the stat-ute authorizing the recruitment of counsel requires the exer-cise of discretion, *see id.* at 658, we believe the district court should consider this issue in the first instance. Moreover, it should act on this motion before giving Mr. Childress an opportunity to file an amended complaint.

In considering whether to recruit counsel on behalf of Mr. Childress, the district court must undertake, of course, "the individualized analysis that *Pruitt* requires." *Navejar*, 718 F.3d at 697. Specifically, the court must consider "whether the difficulty of the case—factually and legally— exceeds [Mr. Childress's] capacity as a layperson to coher-ently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. This inquiry must be "a practical one, made in light of whatever relevant evidence is available on the question." *Id*. Such evidence may include any physical, intellectual, or psychological limitations the plaintiff may have, *see id*., as well as the practical problems the plaintiff may encounter in gathering evidence from individuals employed by an institu-tion in which he is no longer housed, *see Navejar*, 718 F.3d at 698. Here, with respect to the latter requirement, the district court must determine whether the guiding hand of counsel

is necessary to ensure that the complaint reflects an adequate conception of personal liability in § 1983 actions. Specifically, the court must determine whether Mr. Childress can, from the confines of his present institutional situation, adequately investigate and articulate, in accordance with established practices of § 1983 liability, the familiarity of *each defendant* with the practices of the Lifestyle Redirection Program and with the conditions of mandatory release placed on offenders like Mr. Childress.

## Conclusion

For these reasons, we conclude that the district court erred in dismissing Mr. Childress's initial complaint and entering judgment in favor of the defendants. We therefore reverse that judgment, with orders to reinstate Mr. Childress's initial complaint, consider his motion to recruit counsel, and allow him to file an amended complaint.

REVERSED AND REMANDED