In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3860

WACHOVIA SECURITIES, LLC,

*Plaintiff-Appellee,*

and

GOLF VENTURE, LLC,

*Intervenor-Appellee,*

*v.*

LOOP CORPORATION,

*Defendant-Appellee,*

APPEAL OF: BANCO PANAMERICANO INCORPORATED.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:05-cv-03788 — **Joan B. Gottschall**, *Judge.*

ARGUED APRIL 4, 2013 — DECIDED AUGUST 8, 2013

Before MANION, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* This appeal presents yet another chapter in the litigation saga surrounding the many companies

owned in part and in whole by Leon A. Greenblatt. Greenblatt, often referred to as "the 'bad boy of Chicago arbitrage,'" became a "cult hero" among Chicago traders in the late 1990s after his unorthodox trading strategies resulted in a big payday. Greg Burns, *Wily Trader Incurs Wrath of Judge*, Chi. Trib., June 7, 2010, *available at* http://articles.chicagotribune.com/2010-06-07/business/ct-biz-0607-burns--20100607_1_chicago-trader-bankruptcy-chicago-stock-exchange. The new millennium has been less kind to Greenblatt, however, as he has repeatedly found himself in court defending how he uses his "web of corporations." Stephanie Gleason, *Trader with 'Scattered' History Sees Another Company into Chapter 11*, Wall St. J. Blogs (May 23, 2012), http://blogs.wsj.com/bankruptcy/2012/05/23/trader-with-%E2%80%98scattered%E2%80%99-history-sees-another-company-into-chapter-11. Indeed, Greenblatt was in our court only last year on a related appeal. There, we affirmed a district court's order piercing the corporate veil of one of Greenblatt's companies, Loop Corporation, and voiding a lien over that company's assets held by a second Greenblatt company, Banco Panamericano, Inc. *See Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-59 (7th Cir. 2012) (hereinafter "*Wachovia I*").

The same two Greenblatt companies involved in the 2012 appeal are also involved in the present appeal. Greenblatt is 50 percent owner of Loop Corporation, and Greenblatt's family trust is 100 percent owner of Banco Panamericano, Inc. Both Loop and Banco are incorporated in the state of South Dakota, and both have their principal place of business in Illinois. Also involved in the present case are three non-Greenblatt compa-

nies: Wachovia Securities, LLC (organized under Delaware law with its principal place of business in Virginia), Golf Venture, LLC (organized under Delaware law with its principal place of business in Illinois), and EZLinks Golf, Inc. (incorporated in Delaware with its principal place of business in Illinois).

Although appellant Banco came before our court only last year, Banco finds itself here once again—apparently trying to fight the effects of our 2012 decision against it in *Wachovia I*, 674 F.3d at 759. We believed that our decision last year in *Wachovia I* was clear enough, especially since we characterized the situation as "a particularly compelling case" for voiding Banco's lien against Loop, given the Greenblatt companies' "convoluted web of entities, insider transactions, and sham loans all designed to avoid financial responsibility." *Id*. at 749.

In spite of our clear directive last year, Banco nonetheless believes it retains an interest in what happens to Loop's assets. Shortly before we issued the *Wachovia I* opinion last year, the district court ordered the sale of Loop's only valuable asset, EZ Links stock, in order to satisfy two other secured liens against Loop held by Golf Venture and Wachovia. Banco asserts that it has standing on appeal to contest the district court's decisions surrounding this sale. We disagree. Our holding in *Wachovia I* makes Banco, at best, an unsecured creditor of Loop. Golf Venture and Wachovia are secured creditors and, thus, would always take ahead of Banco. No matter how many convoluted ways Banco tries to characterize its situation, Banco simply has no injury here. For that reason, we dismiss Banco's appeal for lack of standing, and we also grant Golf Venture's

and Wachovia's Fed. R. App. P. 38 motions against Banco for bringing a frivolous appeal.

## I

Because we are dismissing this appeal for lack of standing, we will keep our discussion of the facts brief. In the early part of the previous decade, Loop incurred an enormous amount of debt. In 2000, Banco extended a $9.9 million line of credit in exchange for a blanket lien over Loop's assets and a 12% interest rate. *Wachovia I*, 674 F.3d at 749. Loop defaulted on this line of credit when it matured the following year; nevertheless, Banco expanded the line of credit by several million dollars in 2002 and continued to loan Loop money until 2004. Although Banco's early lien against Loop's assets initially gave Banco senior secured creditor status, Banco lost this status once the district court voided the lien (a decision that we affirmed last year). *Id*. at 758-59.

The next major debt that Loop incurred came in February 2001, when Loop purchased millions of shares of EZ Links stock from Golf Venture. Loop paid for this stock in part with a promissory note to Golf Venture in the amount of $1 million. Loop then defaulted on the note when it matured the following year. Golf Venture sued Loop upon default, and in 2002, the Circuit Court of Cook County, Illinois, entered a judgment of over $1.2 million in Golf Venture's favor. Golf Venture recorded this judgment with the Cook County Recorder of Deeds in early 2003.

The final major debt that Loop incurred came in May 2001, when a failed margin transaction left Loop indebted to its brokerage firm, Wachovia, in the amount of $1,885,751.

*Wachovia I*, 674 F.3d at 750. When Loop had failed to pay off this debt by 2003, Wachovia took Loop to arbitration under the terms of the brokerage agreement. The Department of Arbitration of the New York Stock Exchange issued a $2,349,000 award against Loop in May 2005, and Wachovia filed a petition in federal district court to confirm the arbitration award shortly thereafter. The district court granted Wachovia's motion in September 2005, entering judgment in the amount of $2,478,418.80 against Loop (in addition to the $2,349,000 award, the court awarded $90,000 in attorneys' fees and almost $40,000 in interest). Wachovia registered the judgment and almost immediately began collection enforcement proceedings against Loop.

Eight years later, Wachovia is still trying to collect its judgment against Loop through the present lawsuit. Wachovia's initial collection efforts failed for two reasons. First, Loop transferred almost all of its valuable assets to another Greenblatt company, so the only asset remaining by the time that Wachovia began its collection efforts was the EZ Links stock. Second, Banco claimed to have creditor priority over Wachovia. Banco's claim was particularly problematic for Wachovia's collection efforts since Banco was actually in possession of the EZ Links stock certificates as part of its security agreement with Loop. (In fact, Banco's possession of these certificates is what got the company involved in the present lawsuit. Although initially a collection dispute between Wachovia and Loop only, Wachovia served Banco with a citation to discover Loop's assets once Wachovia learned that Banco possessed the EZ Links stock certificates.)

At that point, Wachovia attempted (1) to pierce Loop's corporate veil in order to reach the assets of Greenblatt and his business partners and (2) to void Banco's blanket lien against Loop's assets in order to destroy Banco's creditor priority. The district court held a bench trial on these two issues and decided both in Wachovia's favor in October 2008. *See Wachovia Securities, LLC v. Jahelka*, 586 F. Supp. 2d 972, 980-1014 (N.D. Ill. 2008). Wachovia likely thought it was out of the woods (and finally close to collecting its judgment) once we affirmed the district court's decision last year. *Wachovia I*, 674 F.3d at 759. Yet here Wachovia is again, a year later, still out $2,478,418.80 plus interest.

Nor has Golf Venture had any better luck collecting its 2002 judgment against Loop. In the years following its judgment, Golf Venture has actively pursued collection proceedings against Loop in the Circuit Court of Cook County. But Golf Venture has encountered the same problems as Wachovia in trying to collect its judgment from Loop. Banco has stood in the way of Golf Venture's collection efforts as Loop's alleged senior creditor. And even ignoring Banco's alleged seniority, the substantial depletion of Loop's assets has stood in the way of Golf Venture's collection efforts. Thus, once the district court decided in Wachovia's collection proceedings to pierce Loop's corporate veil and void Banco's blanket lien in October 2008, Golf Venture was quick to jump on Wachovia's bandwagon and take advantage of its favorable ruling. In August 2009—shortly after Wachovia had filed a motion for Loop to turn over enough EZ Links stock to satisfy Wachovia's judgment—Golf Venture filed a motion to intervene in Wachovia's suit pursuant to Fed. R. Civ. P. 24(c). Golf Venture

pointed out to the district court that it had an earlier, superior lien to Wachovia's lien, and while it had no objection to a turnover and court-ordered sale of EZ Links stock, Golf Venture wanted to make sure that it was first in line to collect the proceeds of the sale. When the parties went before the magistrate judge assigned to the case to discuss Golf Venture's motion to intervene, Banco's counsel at the time, Susan Valentine, had the following exchange with the magistrate judge:

> The Court: … [I]f you have an objection, you can raise it at this point.

> Ms. Valentine: We have been litigating this before the Circuit Court of Cook County since 2002 with Golf Venture, so I'm not sure that it belongs before your Honor when there is a state court judge that has been litigating this issue for years.

> The Court: I do understand that you have raised those legal arguments, but for purposes of what is the motion for a turnover, do you have an objection to their intervening for that limited purpose, raising whatever issues they believe are relevant for the court to consider?

> Ms. Valentine: Well, other than what I have just stated, no.

Over no real objection from Banco's counsel—indeed, after Banco had even admitted to the court that "Golf Venture has a judgment [against Loop] that predates Wachovia's"—the magistrate judge unsurprisingly granted Golf Venture's motion to intervene on August 4, 2009.

As soon as the district court allowed Golf Venture to intervene in Wachovia's suit, Golf Venture immediately filed its own motion for Loop to turn over the EZ Links stock. The district court granted both Wachovia's and Golf Venture's motions for turnover on February 18, 2011. Once the motions for turnover were granted, the parties had to determine the best way to sell the EZ Links stock, and after several months of negotiations, arranged for EZ Links to redeem 7,774,668 of its own shares from Loop at a price that would more than satisfy both Wachovia's and Golf Venture's judgments. The district court approved this agreement on September 20, 2011, and it seemed that Wachovia and Golf Venture would at last see their judgments satisfied.

But never one to make things easy, Banco threw yet another roadblock in Wachovia's and Golf Venture's way. On September 22, 2011—only two days after the district court approved the sale of stock back to EZ Links—Banco filed a motion to modify the turnover order from February 2011. In this motion, Banco principally contended that Golf Venture's lien was invalid, making "Golf … no better than any other unsecured creditor." Without any acknowledgment of its failure to raise this argument previously, Banco asked the district court to "remove any reference to Golf" from the turnover order, "grant [Banco] the costs of bringing this motion," and "grant

[Banco] such other and further relief as this Court deems proper."

With this motion, the district judge became justifiably exasperated with Banco's delay tactics. In her November 7, 2011, order denying Banco's motion to amend, the district judge pointed out that "Banco has had ample time—over two years—in which to make the arguments it makes today… . Banco provides no reason why it was unable to, as it puts it, 'catch this scam until now.'" As a result, the judge concluded the order by warning Banco that "any attempt to relitigate those issues that have already been decided by the court will result in a sanction of $1000 per incident."

On the same day that the district judge denied Banco's motion to amend the turnover order, the judge also granted a motion for attorneys' fees previously brought by Wachovia. Wachovia based the motion on its brokerage agreement with Loop, which had expressly provided for the recovery of "reasonable attorneys' fees and interest at the highest lawful rate in the event [Wachovia had to] take[] legal action to collect any amount due." In granting Wachovia's motion, the court remarked that it was "convinced that Wachovia, as a prevailing party who has awaited satisfaction of its judgment for over six years, was entitled to [fees and costs] where they [we]re adequately supported."

Although the district court was convinced that Wachovia deserved attorneys' fees and costs, it went through Wachovia's bill for $267,119 in attorneys' fees and $8,100.31 in costs in great detail, knocking off almost $30,000 in fees and $6,500 in costs that the court found to be either insufficiently documented or

not recoverable. The court's detailed analysis of Wachovia's bill is particularly notable given the failure of any opposing party to file objections to the awarding of fees and costs. (Both Loop and Banco, of course, had desired to file objections to Wachovia's motions for fees and costs, but neither was able to do so in a timely fashion. Loop and Banco both filed motions for an extension of time to file objections on the day that these objections had originally been due to the district court. Loop blamed its failure to file timely objections on its counsel, who had taken a last-minute trip to Zurich, Switzerland, during the time allotted. Banco also blamed its failure on its counsel, who had been on vacation in Los Angeles and had been observing the Jewish holiday of Succos during the time allotted. The court denied both motions on October 25, 2011, because "[e]xtensions at this stage [we]re unreasonable, especially given that counsel did not request extensions until the date their responses were due, even though they were aware of their own holiday or travel obligations in advance of that date.") As a result of its thorough analysis of Wachovia's bill, the district court ordered Loop to pay Wachovia an additional $238,888.58 in fees and costs from the proceeds of the EZ Links sale. Both Wachovia's and Golf Venture's judgments were finally satisfied in full from the proceeds of the EZ Links sale on November 28, 2011. It took Wachovia over six years to collect its judgment and Golf Venture over nine.

Yet even after the satisfaction of their judgments, Wachovia and Golf Venture were still not out of the woods. On December 14, 2011, Banco alone appealed five of the district court's decisions, including (1) its decision to grant Golf Venture's motion to intervene on August 4, 2009, (2) its decision to grant

Golf Venture's motion for turnover on February 18, 2011, (3) its decision to deny Banco's motion to amend and remove Golf Venture from the turnover order on November 7, 2011, (4) its decision to deny Banco's motion for an extension of time to file objections to Wachovia's motion for attorneys' fees and costs on October 25, 2011, and (5) its decision to award Wachovia $238,888.58 in attorneys' fees and costs on November 7, 2011. Loop, notably, did not file an appeal with our court—even though Loop alone had paid for Wachovia's judgment, Golf Venture's judgment, and Wachovia's attorneys' fees and costs out of the proceeds from the sale of its EZ Links stock. Loop, as a result, was styled as an appellee (along with Wachovia, Golf Venture, and EZ Links), and Banco was styled as the sole appellant.

Throughout the course of Banco's appeal to our court, Loop has not made much effort to support Banco's cause—despite the fact that Loop is the only party that suffered a financial loss as a result of the district court's decisions and despite the fact that Loop shares common ownership with Banco. Loop even failed to file an appellee response brief, prompting us to issue a show cause order for Loop to explain why the appeal should not be submitted for consideration without the filing of a brief and oral argument. Loop responded to the order two weeks later, arguing that it was "properly before this court as an appellant," instead of an appellee. Besides the obvious reasons why Loop's and Banco's interests were closely aligned, Loop pointed out that their interests were aligned since "the interest rate on its debt owing to Banco … is approximately twice the judgment interest rate that it would owe to Golf Venture LLC … . [Therefore,] its economic interest favors supporting

the appeal filed by Banco." The next month, we denied Loop's request to proceed as an appellant and directed Loop to file a response brief. Loop ignored our request and has not filed anything in our court since.

Loop, not Banco, was the party ordered to turn over its EZ Links stock so that it could be sold back to EZ Links. Loop, not Banco, was the party ordered to pay Wachovia millions of dollars from the proceeds of the stock sale in order to satisfy a prior judgment. Loop, not Banco, was the party ordered to pay Golf Venture millions of dollars from the proceeds of the stock sale in order to satisfy a prior judgment. Finally, Loop, not Banco, was the party ordered to pay Wachovia hundreds of thousands of dollars in attorneys' fees and costs from the proceeds of the stock sale. Loop clearly has suffered a financial loss as a result of the five district court orders that Banco appeals. But we cannot find a single loss—financial or otherwise—that Banco has suffered as a result of the five district court orders that it appeals. Without a loss or injury of any kind, Banco lacks standing, and we must dismiss the present appeal. We explain our grounds for dismissal more thoroughly in the next section.

## II

This case was initially a judgment-collection action between Wachovia and Loop alone. Banco only became involved in the case because it claimed to be Loop's senior creditor, and as a result, was in possession of Loop's only valuable asset. Last year, we soundly refuted Banco's claim to be Loop's senior creditor, characterizing Banco's blanket lien over Loop's assets as "'a vehicle to avoid Loop's creditors by ensuring that all of

Loop's assets were fully encumbered by a blanket lien in favor of Greenblatt, the dominant shareholder of both Banco and Loop.'" *Wachovia I*, 674 F.3d at 756 (quoting *Jahelka*, 586 F. Supp. 2d at 986). We affirmed the district court and voided Banco's lien because we believed that it represented an "extraordinary attempt to prevent creditors from collecting on a debt, a circumvention of the principle that when a business fails, shareholders are paid last." *Wachovia I*, 674 F.3d at 758.

After our decision last year, Banco should not have any interest remaining in this case. With its blanket lien invalidated, Banco is—at most—an unsecured creditor of Loop. Wachovia, in contrast, is a secured creditor of Loop. (Thankfully, Banco has never contested Wachovia's secured creditor status; it has only contested Wachovia's priority.) The only other party involved in this case, Golf Venture, is also a secured creditor: Golf Venture has a valid, registered judgment against Loop. Although Banco now contests Golf Venture's secured creditor status, it previously admitted as much to the district court, stating in an earlier filing that "Golf Venture has a judgment that predates Wachovia's." (This statement, of course, was made in a self-serving context, when Banco was trying to prevent Wachovia from collecting on its judgment against Loop.) Under the basic principles of secured-transaction law, "secured creditors must be paid in full before unsecured creditors retain any interest" in a debtor's assets. *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 554 (7th Cir. 2001).

Thus, even if we assume that Banco is an unsecured creditor of Loop, secured creditors like Wachovia and Golf Venture are entitled to resolution of their claims before Banco acquires any interest whatsoever in Loop's assets. Despite its

lack of interest in the dispute between Loop and its secured creditors, Banco has filed an appeal contesting the district court's resolution of this dispute. But without any interest, Banco has no standing to file an appeal. Standing to file an appeal requires an "injury caused by the judgment rather than injury caused by the underlying facts." *Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997) (quotation and citation omitted). As a result, if a party cannot show that it has suffered an "adverse effect" from the district court's judgment, then that party lacks standing to appeal. *Id*. (quotation and citation omitted); *see also Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 347-48 (1980) ("It is this constitutional limitation [in Article III, § 2], and not any rule of practice, that has impelled federal courts uniformly to require a showing of continuing adverse effect in order to confer standing to appeal." (quotation and citation omitted)).

Banco has not suffered an adverse effect from any of the five district court decisions that it contests. First, Banco has not suffered any adverse effect from the district court's decision to grant Golf Venture's Rule 24(c) motion to intervene on August 4, 2009. As a secured creditor, Golf Venture would have always been entitled to collect from Loop ahead of Banco. In fact, the only two parties that were potentially affected by the district court's granting of Golf Venture's Rule 24 motion were Wachovia (since Golf Venture claimed to have creditor priority over Wachovia) and Loop (since Golf Venture intervened in order to collect its judgment against Loop). But neither Wachovia nor Loop appeal the granting of this motion.

Second, Banco has not suffered any adverse effect from the district court's decision to grant Golf Venture's motion for

turnover on February 18, 2011. Once again, as a secured creditor, Golf Venture would have been entitled to proceeds from the EZ Links stock sale long before Banco. Moreover, the two parties potentially affected by the district court's decision, Wachovia and Loop, have not appealed. Third—and for exactly the same reasons—Banco has not suffered any adverse effect from the district court's decision to deny Banco's motion to remove Golf Venture from the turnover order on November 7, 2011.

Fourth, Banco has not suffered any adverse effect from the district court's decision to deny Banco's motion for an extension of time to file objections to Wachovia's motion for attorneys' fees and costs. Wachovia's motion asked for its attorneys' fees and costs to be paid by Loop—*not Banco*. Banco never had any interest in this fees and costs dispute. That dispute arose pursuant to a clause in the brokerage contract between Loop and Wachovia. Banco was not a party to that contract. Thus, this dispute should not have concerned any parties besides Wachovia and Loop. Fifth, and finally, Banco has not suffered any adverse effect from the district court's decision to award Wachovia $238,888.58 in attorneys' fees and costs on November 7, 2011. Loop alone was responsible for the payment of these fees and costs.

Even though it is quite clear that Banco has not been injured by any of the five district court decisions that it challenges, Banco boldly tries to turn our own language against us in order to establish an injury. Banco paraphrases our decision affirming the piercing of Loop's corporate veil in *Wachovia I*, 674 F.3d at 751-57, as finding that "Banco is Loop and Loop is Banco." Therefore, Banco reasons, if Loop is injured, then Banco is also

injured, so Banco must have standing to appeal any decision that Loop would have standing to appeal. In essence, Banco desires to use the previous piercing of its corporate veil to its own advantage. But just because a court pierces a corporation's veil in one instance does not mean that all courts henceforth should pierce that corporation's veil, no matter the underlying facts.

In fact, according to Illinois law, which both parties agree applies to the present case, a corporation's veil should only be pierced on a case-by-case basis when "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (citations omitted). We see no such injustice here by refusing to pierce Banco's corporate veil so that it might have standing to appeal; indeed, we believe that piercing the corporate veil in this instance would actually create an injustice, forcing Wachovia and Golf Venture to litigate their judgments against Loop even longer.

Furthermore, Illinois courts have previously prohibited corporations from using the doctrine of piercing the corporate veil in such a fashion. In *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 102 (Ill. 1981), the Illinois Supreme Court expressly stated that a party "cannot assert the equitable doctrine of piercing the corporate veil to disregard the separate corporate existence of a corporation he himself created to gain an advantage which would be lost under his present conten-tion"—which is exactly what Banco is attempting to do here. Because "[t]he rules relating to piercing of the corporate veil are designed to protect those relying on the existence of a

distinct corporate entity," the Illinois Supreme Court has repeatedly expressed support for the general principle that "the corporate veil is never pierced for the benefit of the corporation or its stockholders." *In re Rehab. of Centaur Ins. Co.*, 632 N.E.2d 1015, 1018 (Ill. 1994); *see also Flynn v. Allis Chalmers Corp.*, 634 N.E.2d 8, 11 (Ill. App. Ct. 1994) (holding that a corporation may not pierce its own corporate veil in order "to frustrate creditors"); *Hughey v. Hoffman Rosner Corp.*, 440 N.E.2d 1049, 1051 (Ill. App. Ct. 1982) ("Defendants have uniformly been denied the opportunity to pierce their own corporate veil in order to avoid liability.").

In other words, Banco cannot "have its cake and eat it too." *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 241 (Ill. 2007). Banco cannot claim to be a separate corporation from Loop in order to prevent other creditors from accessing Loop's assets, while at the same time claiming to be the same corporation as Loop in order to have standing to fight Loop's battles on appeal. Loop, not Banco, was the Greenblatt company injured by the five decisions of the district court here before us on appeal. If Loop wanted to appeal these decisions, it had an opportunity to do so. But since Loop failed to take advantage of this opportunity, the decisions of the district court stand.

Regardless of how many ways Banco spins the facts of this case, Banco cannot get around the fact that it lacks an injury. Nor can Banco get around the fact that "the irreducible constitutional minimum of standing" required by U.S. Const. Art. III, §2, demands that Banco have an "injury in fact" before filing an appeal. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Transamerica*, 125 F.3d 392, 395 (7th Cir. 1997)

("[S]tanding to appeal is recognized if the appellant can show an adverse effect of the judgment. Thus even a party who has properly intervened in a case may not appeal a judgment from which he or she suffers no adverse effects." (quotation and citation omitted)). Moreover, even if Banco were to somehow convince us that it had an injury, it cannot convince us that its injury would be "redressed by [our] favorable decision," which is another requirement of standing. *Lujan*, 504 U.S. at 561. Banco wants our court to throw Golf Venture out of the present case and to reverse the district court's order that Loop pay Wachovia's fees and costs. But these actions would help Loop, not Banco. In sum, regardless of how many ways we spin the facts of this case, there is no possible way for Banco to have standing to bring the present appeal.

**III**

Since Banco lacks standing to bring this appeal, we will not address the merits. Nevertheless, before we conclude, we must address Wachovia's and Golf Venture's Fed. R. App. P. 38 motions for attorneys' fees and costs incurred during this appeal. Rule 38 provides, "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous under Rule 38 "when the result is obvious or when the appellant's argument is wholly without merit." *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002) (quotation and citation omitted). Here, Wachovia and Golf Venture claim that Banco's appeal is frivolous because Banco very obviously lacks standing to appeal any of the five district court decisions that it contests.

We agree with Wachovia and Golf Venture that Banco's appeal is frivolous. As we pointed out in the previous section, Banco lacks standing on multiple grounds, including a clear lack of injury and lack of redressability. Banco lost nothing from the district court's judgment, nor did it stand to gain anything from this appeal. Consequently, it is clear to us that Banco filed this appeal "with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." *Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 412 (7th Cir. 1997) (quoting *Flexible Mfg. Sys. Pty. Ltd. v. Super Prod. Corp.*, 86 F.3d 96, 101 (7th Cir. 1996)). Banco successfully delayed both Wachovia and Golf Venture from collecting their multi-million dollar judgments from Loop for almost a decade. In the past, we have sanctioned an appellant who delayed an appellee from collecting a judgment for two years, let alone ten. *See Flexible*, 86 F.3d at 101 (imposing Rule 38 sanctions because the "appeal had absolutely no prospect of success and has served only to tax the resources of this Court … cost[ing the appellant] more than two years of delay in collecting its arbitration award"). Banco has repeatedly obstructed Wachovia's and Golf Venture's paths to collection by making up some new argument why it is entitled to Loop's one valuable asset—or at the very least, making up some new argument why Wachovia and Golf Venture are *not* entitled to Loop's one valuable asset.

The delays end now. Rule 38 serves "both a compensatory purpose and a deterrent purpose," and we believe its deterrent purpose will be particularly well served here by the imposition of sanctions on Banco. *Harris N.A. v. Hershey*, 711 F.3d 794, 801 (7th Cir. 2013). The district court has already warned Banco

regarding its persistence in attempting to block Wachovia and Golf Venture from collecting their judgments. One of the district court orders challenged by Banco on appeal characterizes Banco as "the bad actor here, because yet again Banco attempts to relitigate issues that have already been decided by the courts, carefully glossing over or ignoring earlier decisions." In fact, the last line of that same district court order specifically warns Banco that "any attempt to relitigate those issues that have already been decided by the court will result in a sanction of $1000 per incident." Apparently these threatened sanctions from the district court were not a sufficient deterrent for Banco to desist from its vexatious litigation strategy. We hope that our imposed sanctions will be a sufficient deterrent for Banco.

Accordingly, we AFFIRM all five decisions of the district court, and we GRANT both Wachovia's and Golf Venture's motions for sanctions pursuant to Fed. R. App. P. 38. (Golf seeks a doubling of its costs, but we think a single award of costs in favor of each appellee is sufficient.) Wachovia and Golf Venture will have twenty-eight days to submit to the clerk of this court proper documentation of their attorneys' fees and costs expended in defense of this appeal. Banco will then have fourteen days to file a response to Wachovia's and Golf's documentation. Based upon these filings, we will determine the appropriate amount of fees and costs to assess, and Banco will be responsible for reimbursing Wachovia and Golf Venture for these fees and costs.