In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 22-2007

DONALD J. KINSELLA,

*Plaintiff-Appellant,*

*v.*

BAKER HUGHES OILFIELD OPERATIONS,
LLC and BAKER HUGHES, a GE
COMPANY, LLC,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-04589 — **Robert W. Gettleman**, *Judge.*

---

ARGUED MARCH 29, 2023 — DECIDED MAY 8, 2023

---

Before SYKES, *Chief Judge,* and ROVNER and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* An arbitrator rejected Donald Kinsella's claim that his employer, Baker Hughes, violated the Americans with Disabilities Act by failing to accommodate him after he suffered work-related injuries. Kinsella sought vacatur of the award, contending the arbitrator exceeded his

powers by requiring proof of discriminatory intent for his claim. But Kinsella misconstrues the arbitrator's statements concerning a lack of evidence showing discriminatory intent. They were made as part of attributing fault on both sides for a breakdown in the interactive process to find a reasonable accommodation. So, we affirm the district court's denial of vacatur. Baker Hughes also seeks sanctions, which we deny because Kinsella had colorable grounds for this appeal.

**I.**

**A.**

Kinsella was a field operator for Baker Hughes Oilfield Operations, LLC[†] when, in June 2013, he suffered work-related knee injuries that left him unable to work for three years. He received disability benefits during that time and, in June 2016, his physician deemed him fit to work, but only in sedentary jobs. Baker Hughes's human resources team, including HR Business Partner Kristyn Martinez, helped him look for jobs at the company that fit his physical capabilities. As part of an interactive process to arrive at an accommodation, Kinsella submitted an ADA Reassignment Request form to his employer, noting that he was permanently restricted to sedentary work with standing and sitting limitations. Based on these restrictions, Martinez told Kinsella that Baker Hughes could not accommodate him in his previous field operator job. She also informed him that he had 30 days to look for jobs on the company website and that a failure to find alternative work within that time would result in termination.

---

[†] We refer to appellees Baker Hughes Oilfield Operations, LLC and its parent, Baker Hughes, a GE Company, jointly as Baker Hughes.

Though the 30-day period expired on August 20, 2016, Martinez spoke with Kinsella on August 31 and suggested he apply for the sedentary job of dispatcher and told him to do so by September 6. She also told him to keep her apprised of any developments in his job application process. Kinsella failed to apply on time, and Martinez extended the deadline to September 9, which Kinsella also missed. He applied for a dispatcher position the next day, but he did not get an extension approval from Martinez.

Baker Hughes's internal documents say Kinsella was rejected for the position on September 10, but his application receipt, marked with the same date, said that Baker Hughes would review his application and qualifications. Kinsella did not follow up with Baker Hughes about his application, and a non-disabled employee was hired for the position. Records later revealed that Kinsella had two separate profiles in Baker Hughes's Taleo job application system. Martinez was not aware of these two profiles or Kinsella's application. She testified she had not seen any application in the profile of Kinsella that she had examined.

On October 25, Kinsella received a termination letter from Martinez and his former supervisor, citing a failure to apply for a position at Baker Hughes. Kinsella responded to this letter on October 31, stating he did in fact apply for the dispatcher position and attaching a receipt confirming his application. After further investigation, Baker Hughes began the process of reinstating Kinsella to his previous "inactive/long-term disability" employment status. Baker Hughes's investigator continued to have discussions about this process with Kinsella and his counsel until 2017 when, without clear explanation, discussions ceased.

**B.**

In April 2018, Kinsella filed a claim of disability discrimi-
nation against Baker Hughes with the Equal Employment
Opportunity Commission. The EEOC dismissed the claim as
untimely. Kinsella then sued the defendants in district court,
alleging failure-to-accommodate, discriminatory discharge,
and retaliation claims under the Americans with Disabilities
Act, 42 U.S.C. § 12101 *et seq.*, as well as other state law claims.

The parties' employment agreement contained an arbitra-
tion clause, so the district court granted the parties' joint mo-
tion to stay the case pending arbitration. After learning that
arbitration was ongoing, the district court dismissed the case
"without prejudice with leave to reinstate within 7 days of the
arbitration ruling." "If a motion to reinstate [was] not filed by
that date, the dismissal [would] convert to with prejudice
without further order of court."

Following an evidentiary hearing, the arbitrator issued an
opinion and award, granting summary judgment on all
claims for Baker Hughes. Kinsella then asked the district court
to reinstate the case and to vacate the arbitration award on his
failure-to-accommodate claim. He sought vacatur under Sec-
tion 10 of the Federal Arbitration Act, 9 U.S.C. § 10, on the
ground that the arbitrator exceeded his powers by requiring
illegitimate elements of proof on the failure-to-accommodate
claim. The district court reinstated the case, but it denied va-
catur and entered a judgment of dismissal. Kinsella timely ap-
pealed the denial of vacatur. On appeal, Baker Hughes moved
for sanctions under Federal Rule of Appellate Procedure 38,
arguing this appeal is frivolous.

## II.

Pursuant to our order, the parties filed supplemental memoranda on whether this court has jurisdiction in light of *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), in which the Supreme Court held that a federal court must discern an independent jurisdictional basis on the face of an application to confirm or vacate an arbitration award under 9 U.S.C. §§ 9, 10. *Id.* at 1314, 1316–17. *Badgerow* took a different path than *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009), where the Court held that federal courts may "look through" an FAA Section 4 petition to compel arbitration by ascertaining the jurisdictional basis in the underlying dispute. *Vaden* was based on Section 4's specific language directing a federal court to determine whether the court "would have jurisdiction" "save for [the arbitration] agreement." 556 U.S. at 62–63 (quoting 9 U.S.C. § 4). Because Sections 9 and 10 have no such language, and the FAA itself does not create federal jurisdiction, *Badgerow* rejected look-through jurisdiction for applications to confirm or vacate an award. 142 S. Ct. at 1314, 1316.

Here, the underlying ADA failure-to-accommodate claim arises under federal law, and because Kinsella originally filed the claim in district court, federal jurisdiction continues over his FAA Section 10 motion to vacate. In addition, although Kinsella did not plead diversity jurisdiction in his complaint, the parties' subsequent filings sufficiently allege that the parties are diverse and that the amount in controversy exceeds $75,000. So, diversity is another basis for jurisdiction in the underlying suit. Under our caselaw, the district court's stay did not impact its jurisdiction to confirm or vacate the arbitration award. *See Davis v. Fenton*, 857 F.3d 961, 962–63 (7th Cir. 2017); *Baltimore & Ohio Chi. Terminal R.R. Co. v. Wis. Cent. Ltd.*,

154 F.3d 404, 407 (7th Cir. 1998). Similarly, the district court's dismissal without prejudice with leave to reinstate was in effect a stay, so it did not deprive the district court of jurisdiction to rule on the motion to vacate. *See Arrieta v. Battaglia*, 461 F.3d 861, 863 (7th Cir. 2006); *Baltimore & Ohio*, 154 F.3d at 407–08. *Badgerow* does not change these conclusions. The district court's entry of final judgment following the denial of vacatur provided the basis for this court's jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3).

### III.

An arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Kinsella seeks vacatur under this provision, contending the arbitrator exceeded his powers by inserting discriminatory intent as an element of proof into the failure-to-accommodate claim. When reviewing a district court's decision on a motion to vacate an arbitration award, we review legal questions de novo and factual findings for clear error. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995); *see Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 819 (7th Cir. 2021). There are no disputes of fact that must be resolved here. The parties did not submit discriminatory intent to the arbitrator as an element of Kinsella's claim. In any case, discriminatory intent is not an element of an ADA failure-to-accommodate claim. *See Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 503 (7th Cir. 2020); Seventh Circuit Pattern Civil Jury Instruction 4.03. Before moving to the merits of Kinsella's legal contention, we put a finer point on our de novo review.

## A.

"Judicial review of arbitration awards is tightly limited," *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (citation omitted), and a party seeking relief under Section 10(a)(4) "bears a heavy burden," *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Arbitrations are creatures of contract, *Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008), so the arbitrator's power is constrained by the parties' agreement to submit a particular question to arbitration. *See Oxford Health Plans*, 569 U.S. at 569; *First Options*, 514 U.S. at 943. "With few exceptions, as long as the arbitrator does not exceed this delegated authority, her award will be enforced. This is true even if the arbitrator's award contains a serious error of law or fact." *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003) (citations omitted); *see Oxford Health Plans*, 569 U.S. at 569 (citing *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

Section 10(a)(4) concerns whether the arbitrator interpreted the law or contract submitted by the parties—not whether the arbitrator interpreted it correctly. *Continental Casualty*, 10 F.4th at 819 ("The question 'is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.'" (quoting *U.S. Soccer Fed'n, Inc. v. U.S. Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (quotations and citations omitted))). "Only if 'there is no possible interpretive route to the award' may a

'noncontractual basis … be inferred and the award set aside.'"
*Id.*

**B.**

The arbitrator here applied the law governing Kinsella's claim for a failure to accommodate his disability under the ADA. So, any objection that the arbitrator incorrectly interpreted the ADA must fail. *Continental Casualty*, 10 F.4th at 819. Kinsella contends, however, that the arbitrator improperly added an element to his failure-to-accommodate claim, requiring him to also prove discriminatory intent.

He analogizes this case to those in which the arbitrator strayed from the interpretation and application of the contract in dispute. *See Anheuser-Busch, Inc. v. Loc. Union No. 744*, 280 F.3d 1133, 1142 (7th Cir. 2002) (The arbitrator "cast aside the extensively negotiated contract and ignored the clear and specific language of the commission-rates clause, the arbitration clause, and the zipper clause."); *Tootsie Roll Indus., Inc. v. Loc. Union No. 1*, 832 F.2d 81, 84 (7th Cir. 1987) ("The effect of the arbitrator's conclusion was to eliminate the agreement's provision that Fikes would be terminated if she was absent 'for any reason whatsoever.'"). While *Anheuser-Busch* and *Tootsie Roll* involved arbitrators' failures to apply explicit contractual terms—rather than an element of a legal claim—the cases capture the principle that arbitrators must not stray from submitted subject matters. Kinsella also cites *Edstrom*, 516 F.3d at 552–53, in which this court directed vacatur of an arbitral award where the arbitrator disregarded contractually selected law and applied a different state's law. The analogy to *Edstrom* is on stronger footing, but unlike that case, the arbitrator here applied the correct law—the ADA.

We have not addressed whether, under Section 10(a)(4), an arbitrator exceeds his authority by introducing an extra element of proof into a claim. And we need not do so here because Kinsella's legal argument is based on a misunderstanding of this arbitrator's treatment of discriminatory intent. Before exploring this point, we review the law governing ADA failure-to-accommodate claims.

> To prevail on a failure to accommodate claim, a plaintiff must prove that (1) he was a qualified individual with a disability, (2) the employer was aware of his disability, and (3) the employer failed to reasonably accommodate his disability. Relevant to—and sometimes determinative of— the third element is the employer and employee's respective cooperation in an interactive process to determine a reasonable accommodation.

*Williams*, 982 F.3d at 503 (cleaned up and citation omitted). "Once an employee commences the interactive process to find a reasonable accommodation, employers have an 'affirmative obligation to seek the employee out and work with her to craft a reasonable accommodation.'" *Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629, 638 (7th Cir. 2020) (quoting *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789, 807 (7th Cir. 2005) (citation and internal brackets omitted)).

"Both parties are required to make a 'good faith effort' to determine what accommodations are necessary, but if a breakdown of the process occurs, 'courts should attempt to isolate the cause … and then assign responsibility.'" *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016)

(quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). This court has stated:

> No hard and fast rule will suffice, because nei-
> ther party should be able to cause a breakdown
> in the process for the purpose of either avoiding
> or inflicting liability. Rather, courts should look
> for signs of failure to participate in good faith or
> failure by one of the parties to make reasonable
> efforts to help the other party determine what
> specific accommodations are necessary. A party
> that obstructs or delays the interactive process
> is not acting in good faith. A party that fails to
> communicate, by way of initiation or response,
> may also be acting in bad faith.

*Beck*, 75 F.3d at 1135. Though we have not expressly ad-
dressed the issue, it follows that an employer's discriminatory
animus or intent can factor into attributing fault for a break-
down of the interactive process. *Cf. Burdett v. United Parcel
Serv., Inc.*, No. 1:18-CV-00418-HAB, 2021 WL 5115642, at *8
(N.D. Ind. Nov. 3, 2021); *Powers v. USF Holland Inc.*, No. 3:12-
CV-461 JD, 2015 WL 1455209, at *10–11 (N.D. Ind. Mar. 30,
2015).

As the district court recognized, Kinsella misreads the ar-
bitrator's opinion and award as inserting discriminatory in-
tent as a new element of his ADA failure-to-accommodate
claim. The arbitrator discussed discriminatory intent solely in
the context of finding fault on both sides for the breakdown
of the interactive process to arrive at a reasonable accommo-
dation for Kinsella. Kinsella applied after the deadline for the
dispatcher position and did so without approval for an exten-
sion. Once he applied, he failed to keep Martinez apprised of

his application. For her part, Martinez failed to review both of Kinsella's profiles in the Taleo system.

It is in this context that the arbitrator wrote the two sentences that Kinsella misapprehends:

> [T]here is no evidence in the record that [Martinez] harbored any discriminatory animus against [Kinsella] or any other disabled person, or that she attempted to thwart his efforts to find alternative employment that would be consistent with his medical restrictions.
>
> …
>
> [T]he credible evidence shows no discriminatory animus by Martinez, or that she intentionally kept [Kinsella] from being assigned to the Dispatch job because of his disability, or that she intentionally caused the interactive process to fail.

On this basis, the arbitrator concluded that "there is fault on both parties in the interactive dialogue process," and thus, that Baker Hughes did not fail to reasonably accommodate Kinsella's disability. These two sentences cannot be read as requiring a new element for Kinsella's ADA failure-to-accommodate claim. The caselaw mentioned above supports the arbitrator's consideration of discriminatory animus and intent when considering fault. Nothing indicates that the arbitrator exceeded his powers, so we affirm the district court's denial of vacatur.

**IV.**

Sanctions may issue if "an appeal is frivolous." FED. R. APP. P. 38. Rule 38 serves "both a compensatory purpose and a deterrent purpose," and this court is especially wary of vexatious losing parties who levy frivolous arguments to delay collection of arbitral awards. *Wachovia Sec., LLC v. Loop Corp.*, 726 F.3d 899, 910 (7th Cir. 2013) (quoting *Harris N.A. v. Hershey*, 711 F.3d 794, 801 (7th Cir. 2013)); *see Prostyakov v. Masco Corp.*, 513 F.3d 716, 726 (7th Cir. 2008). Kinsella does not seek to delay Baker Hughes's collection on a money award, as there is none here.

We also discern no ill motives on Kinsella's part in pursuing this appeal, which is based on a legal issue that this court has not addressed. His argument relied on a colorable—albeit erroneous—premise that the arbitrator required Kinsella to prove an extra element on his failure-to-accommodate claim. Such mistakes are not the subject of Rule 38 sanctions. *See Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 887 (7th Cir. 2020) ("'Frivolous,' we stress, is not a synonym for 'unsuccessful,' or 'unlikely to succeed.'" (citing *NLRB v. Lucy Ellen Candy Div.*, 517 F.2d 551, 555 (7th Cir. 1975))). So, we deny the motion for sanctions.

\* \* \*

For the reasons stated, we AFFIRM the district court's denial of vacatur and DENY the motion for sanctions.