In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1546

MICHAEL JEZIOR,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-06907 — **Jorge L. Alonso**, *Judge.*

ARGUED DECEMBER 10, 2025 — DECIDED JUNE 24, 2026

Before BRENNAN, *Chief Judge,* and LEE and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Michael Jezior served as an engineer-paramedic in the Chicago Fire Department before suffering a stroke that limited his mobility. Because he could no longer perform his duties, the Department placed him in a procurement position at O'Hare Airport. Nearly eight years later, when Jezior became eligible for a promotion to lieutenant, the Department offered him options to pursue the promotion, but

none of the available promotions allowed him to remain working at the airport. Jezior sued the City of Chicago under the Americans with Disabilities Act, alleging that the Department denied him a reasonable accommodation and discriminated against him. The district court entered summary judgment for the City, and Jezior now appeals. We affirm.

## I. Background

In reviewing the district court's grant of summary judgment to the City, we construe the facts and draw all reasonable inferences in the light most favorable to Jezior, the nonmoving party. *See Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 459 (7th Cir. 2021).

Jezior has worked at the Department since 1997, first as a paramedic and later as an engineer-paramedic. In 2009, he applied to become a lieutenant and was placed on an eligibility list. The Department offers candidates promotions in the order they appear on the list as vacant lieutenant positions arise.

In 2013, Jezior suffered a stroke and lost mobility on the left side of his body. Through physical therapy, his condition improved, but he still lacked fine motor skills, needed a leg brace to walk, and had difficulty standing for longer than 10 minutes. Jezior could no longer perform the essential duties of an engineer-paramedic (his position at the time), so he submitted a request for an accommodation. The Department offered him a non-firefighting position in the Bureau of Operations performing procurement tasks at O'Hare Airport, where he has worked ever since.

In the following years, as part of the City's effort to reduce costs, the Department undertook efforts to "civilianize" certain positions in its workforce that did not require firefighting.

One of the targeted positions was a lieutenant-rank procurement role at O'Hare held by Leslie Muse, who happened to be Fire Department Commissioner Richard Ford's sister. Muse left the airport for a different lieutenant position, and Jezior took over at least some of her procurement responsibilities.

By March 2021, the Department reached Jezior's name on the eligibility list for lieutenant promotions. Jezior and his supervisor, John Gies, initially expected Jezior to receive the promotion while staying in his procurement position at the airport. But Deputy Fire Commissioner Brian Helmold disagreed. Helmold arranged a meeting with Jezior, Gies, and Jezior's union representative, during which Helmold informed Jezior that he could not receive an in-place promotion because all available lieutenant positions at the airport required firefighting. Instead, Jezior could either accept the promotion and go through the Department's accommodation process to find a suitable position or waive it and remain in his current position. Helmold did not identify a specific position that could accommodate Jezior, but he suggested that one might become available in the Fire Prevention Bureau.

Commissioner Ford formally denied Jezior's requested in-place promotion through a title change form. He did so because he had not received any accommodation paperwork indicating that Jezior could physically qualify for a lieutenant position in the Bureau of Operations with an accommodation.

By the second time Jezior met with Gies and Helmold, a lieutenant had retired from the Fire Prevention Bureau. Helmold told Jezior that he could accept the open lieutenant position in the Bureau subject to medical clearance or waive the promotion. Jezior and Helmold dispute whether Helmold

specified that Jezior could alternatively seek a different accommodation through the City's disability office.

In any event, a couple days later, Jezior spoke with the City's disability officer who told him that she would try to find a lieutenant position at a location with an elevator (to accommodate Jezior's difficulty using stairs) but that she could not guarantee one. He would need to file accommodation paperwork, including a medical questionnaire, to kick off this process. But Jezior declined to file the paperwork because he did not want to risk failing medical clearance for a new position and get forced into early retirement. Instead, he decided to stay at the airport in his current rank for the time being.

## II. Discussion

We review the district court's order granting summary judgment *de novo*. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Failure to Accommodate

Jezior first argues that he marshaled evidence from which a reasonable jury could find that the Department failed to reasonably accommodate his disability when it refused to offer him a lieutenant position at the airport.

The ADA prohibits discrimination "against a qualified individual on the basis of disability," including by failing to make "reasonable accommodations." 42 U.S.C. § 12112(a), (b)(5)(A). To recover for an employer's failure to accommodate, a plaintiff must show that "(1) he was a qualified individual with a disability, (2) the employer was aware of his disability, and (3) the employer failed to reasonably

accommodate his disability." *Kinsella v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1104 (7th Cir. 2023) (citation omitted).

The parties agree that the Department was aware of Jezior's disability, so the only disputed elements are the first and the third.

Under the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). And it is the employer's prerogative "to define the core qualifications for a position." *Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998). This is especially true in the public-safety context where even rarely performed duties may be essential to a position. *Tate*, 51 F.4th at 796; *see Vargas v. DeJoy*, 980 F.3d 1184, 1189 (7th Cir. 2020) ("Consider the firefighter: while he may not often have to carry an unconscious adult from a burning building, failing to require that he ably perform this function when called upon would run counter to his duty to public safety.").

Jezior argues that he was qualified for an in-place promotion because he had performed his role at the airport for many years without issue. But this reasoning presupposes that a lieutenant position involving no changes to his duties in fact existed—it did not. And we have held that "[a]n employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee." *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010).

Here, the essential duties of the lieutenant positions at the airport included firefighting, a task that Jezior admits he cannot perform. And on this record, we cannot find that such a requirement was illusory, especially where the position implicates public-safety concerns. Jezior therefore was not qualified for an in-place promotion.

Even if he were qualified, Jezior's claim fails for another reason: his requested accommodation is not reasonable. He contends that an in-place promotion was a reasonable request because it would not have caused the Department undue hardship to keep him in the same position with a higher rank.

Jezior effectively requests a rule that an employee is entitled to the accommodation of his choice or, alternatively, a promotion in place. But the ADA requires neither. We have held time and again that "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers." *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 546 (7th Cir. 2008) (citation omitted); *see, e.g.*, *Igasaki v. Illinois Dep't of Financial & Professional Regulation*, 988 F.3d 948, 961 (7th Cir. 2021); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998). And as we have already explained, an employer has no obligation to create a new role or change the essential duties of an existing one. *Gratzl*, 601 F.3d at 680. Consider that Commissioner Ford's own sister left her non-operational procurement role at the airport after the Department decided to no longer finance it as a lieutenant position. The Department did not have to recreate that position, contrary to the City's cost-cutting civilianization efforts, to reasonably accommodate Jezior.

Rather, "[w]hen a qualified employee has requested an accommodation, the ADA requires both parties to engage in an

informal interactive process to identify an appropriate accommodation." *Youngman v. Peoria County*, 947 F.3d 1037, 1042 (7th Cir. 2020). If this process breaks down, "courts should attempt to isolate the cause and then assign responsibility." *Kinsella*, 66 F.4th at 1105 (cleaned up).

We agree with the district court that Jezior voluntarily cut off this interactive process when he refused to explore alternatives. During the first meeting between Helmold and Jezior, Helmold explained that Jezior would need to go through the Department's accommodation process to accept his promotion and that a non-operational lieutenant position might become available in the Fire Prevention Bureau. But Jezior demonstrated no interest in pursuing these options. Instead, he opted to remain in his current position without submitting any accommodation paperwork.

Jezior seeks to excuse his failure to engage in the process by arguing that the Department offered him a "Hobson's choice" to either waive the promotion or risk early retirement for failing to medically clear a new position. He notes that Helmold did not know the requirements for an available role, the extent of Jezior's physical abilities, or whether any specific position would open.

But this theory relies only on speculation. We cannot fault Helmold or the Department for not knowing what specific positions could accommodate Jezior because those facts would have been developed through the accommodation process, including the medical questionnaire that Jezior declined to submit. No one knows what would have resulted from the process because Jezior decided not to pursue it. We cannot assume that Jezior's worst-case scenario would have come to

pass. Accordingly, summary judgment was appropriate on Jezior's failure-to-accommodate claim.

### B. Disability Discrimination

Jezior also says that he presented evidence from which a reasonable jury could find that the Department discriminated against him based on his disability by denying him a lieutenant position at the airport.

To establish disability discrimination under the ADA, a plaintiff must show that "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) his disability caused the adverse employment action." *Igasaki*, 988 F.3d at 961.

Jezior's disability-discrimination claim suffers from one of the same defects as his failure-to-accommodate claim: he cannot show that he was qualified for a lieutenant position at the airport. *See Schoper v. Board of Trustees of Western Illinois University*, 119 F.4th 527, 534 (7th Cir. 2024).

But this claim also fails on causation grounds. To evaluate causation, we consider whether a reasonable juror could conclude that Jezior would have been given his requested promotion "if he was not disabled, and everything else had remained the same." *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019) (cleaned up).

On causation, Jezior first argues that he has presented direct evidence of discrimination by Commissioner Ford—namely, that Ford refused to promote him despite knowing that a lieutenant position in procurement would not require any more physical ability than the role Jezior was already performing. But again, this argument relies on the false

assumption that such a position existed. As to lieutenant-rank positions that *did* exist, Jezior was told multiple times that he could transfer to the Fire Prevention Bureau, or seek an accommodation with the disability office to remain in the Bureau of Operations. He pursued neither path.

Jezior next contends that inconsistencies in the Department's explanations for its refusal to offer an in-place promotion demonstrate pretext. He suggests that Helmold focused on the fact that a lieutenant-rank procurement position did not exist, while Commissioner Ford's denial of his title change cited Jezior's physical limitations.

"Shifting and inconsistent explanations can provide a basis for a finding of pretext. But the explanations must actually be shifting and inconsistent to permit an inference of mendacity." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 589–90 (7th Cir. 2020) (citation omitted). Here, Helmold and Commissioner Ford's positions are consistent: the Department sought to reduce costs by civilianizing positions that did not require firefighting, so the existing lieutenant positions at the airport required firefighting. This legitimate rationale does not suggest pretext.

Jezior finally points to three comparators without disabilities who he maintains were similarly situated and treated more favorably. "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether there are enough common factors to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 507 (7th Cir. 2017) (cleaned up).

First, Jezior contends that Lieutenant John McGill, who was in the same lieutenant class as Jezior, was promoted in place. But McGill was in an exempt-rank position—deputy district chief—meaning he was appointed by the fire commissioner outside the typical promotion process. He received the title of lieutenant while serving in that role but received no increase in his salary with that promotion. Thus, he did not receive a promotion like the one Jezior sought, which would involve the same job responsibilities as a lower-rank position but with higher pay.

Next, Jezior notes that Helmold received a promotion when a budget line had been unavailable for his new position. But Helmold's promotion moved him to an entirely different role—from district chief to director of training at the academy—both of which were exempt-rank positions. Jezior, by contrast, asked to remain in the same role with a new rank.

Lastly, Jezior asserts that Lieutenant Timothy Sampey received a promotion in place through manipulation of budget lines. But he neither presented evidence of Sampey's promotion history to the district court nor developed this comparison in his brief on appeal, so the issue is waived. *See Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023).

Jezior presented no evidence of a comparator who received what he was denied: a promotion and pay raise that entailed no changes to his job responsibilities. The district court thus correctly granted summary judgment to the City on Jezior's disability-discrimination claim.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's judgment.